417 So.2d 456 (1982)
Jerome S. GLAZER
v.
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES.
No. 14964.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Writ Granted October 1, 1982.
*458 Phillip A. Wittmann, Charles L. Stern, Jr., Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, Harvey H. Posner, Watson, Blanche, Wilson & Posner, Baton Rouge, for appellant.
R. Gray Sexton, Commission on Ethics for Public Employees, Baton Rouge, for appellee.
Before ELLIS, PONDER and SAVOIE, JJ.
PONDER, Judge.
Plaintiff appealed from a decision of the Commission on Ethics for Public Employees finding him in violation of La.R.S. 42:1111C(2)(d) and 42:1112B(5)[1] and ordering his resignation from the Mineral Board.
The Commission after finding plaintiff in violation of the two statutes, ordered him to resign within thirty days, barred him from future service on the Mineral Board for four years and notified state mineral lessees that had done business with Glazer Steel that payments made for services rendered would constitute a violation of La.R.S. 42:1117.[2]
*459 The issues on appeal are: 1) the constitutionality of 42:1111C(2)(d) and 42:1112B(5); 2) whether plaintiff has personally participated in transactions in violation of La.R.S. 42:1112B(5); and 3) whether those provisions permit dealings between state mineral lessees and corporations in which a Mineral Board member has an interest.
We reverse.
Glazer Steel Corporation, the stock of which is owned entirely by plaintiff, is a metal service center which sells material to petroleum companies for the maintenance of their facilities.
The parties stipulated that of 268 companies holding mineral leases with the State of Louisiana and paying royalties, Glazer Steel Corporation did business with seven from April 1, 1980 to March 31, 1981, in the amount of $458,639.85. The total sales to all customers by Glazer Steel Corporation during that period was $40,376,951.00.
Plaintiff first argues that La.R.S. 42:1111C(2)(d) and 1112B(5) are penal in nature[3] and are subject to constitutional proscriptions against vagueness and overbreadth. He contends that the loss of his position with the Mineral Board will impinge on a protected liberty interest and is intended to punish rather than remedy.
The removal of plaintiff from his appointed position and the bar to future eligibility could infringe on plaintiff's liberty interests. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
A statute which either forbids conduct or requires the doing of an act and therefore acts as a guide to future conduct is void for vagueness if men of common intelligence must guess at its meanings. Connick v. Lucky Pierre's, 331 So.2d 431 (La.1976).
Plaintiff contends that the terms "services" and "thing of economic value" in Section 1111C(2)(d) and the latter in Section 1112B(5) are unconstitutionally vague.
Both phrases are defined by the Code. La.R.S. 42:1102(24) and 42:1102(22).[4] The provisions when read as a whole, adequately provide a person of fair intelligence with fair notice of what conduct is prohibited.
*460 Plaintiff argues that the phrase "interests which may be substantially affected by", in La.R.S. 42:1115B(2) is also unconstitutionally vague. He argues that modifiers are needed to specify the type of interest that is prohibited and cites State v. Murtes, 232 La. 486, 94 So.2d 446 (1957). However, the prohibited conduct in Section 1115B(2) is not the general interest that the public servant has, as in Murtes, but has a much more specific meaning.
"In a position to affect directly", found in Section 1112B(5) is also constitutionally adequate. When the provision is read as a whole, with the terms defined, it gives adequate notice.
Plaintiff's next argument is that Section 1112B(5) denies him equal protection. Part C of that section mandates that all public employees, except appointed board members, disqualify themselves from participation in any matter where La.R.S. 42:1111 et seq. would be violated. La.R.S. 42:1112C.[5]
Equal protection requirements are fulfilled if there is a rational basis for using the classification method so as to attain a legitimate state interest. City of New Orleans v. Dukes, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); Succession of Thompson, 367 So.2d 796 (La.1979); McElveen v. State, Municipal Police Employees Retirement System, 399 So.2d 664 (1st Cir. 1981).
Because appointed members of boards are generally charged with formulating policy and participating in fundamental decision-making proceedings, there is a rational relationship to the state interest of avoiding conflicts of interest without creating unnecessary barriers to public service, as provided in the Code. La.R.S. 1101B.[6] There is a legitimate reason for making a distinction. We find no constitutional infirmity.
Plaintiff next argues that neither Section 1111C(2)(d) nor Section 1112B(5) prohibits arm's length transactions. He contends that without evidence that he and his company have received special consideration from these companies because of his position on the Mineral Board or have ever sought special treatment, the transactions are not within the purview of the sections.
The Code of Governmental Ethics, in an attempt to protect against conflicts of interest between the private interests of a public servant and his public duties, has set up ethical standards of conduct. La.R.S. 42:1101B. These standards do not require that there be actual corruption on the part of the public servant or actual loss by the state. The statute establishes an objective rather than subjective standard of conduct, and actions prohibited by that standard are sufficient to violate the statute. See United States v. Mississippi Valley Generating Co., 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961). Plaintiff's argument is without merit.
Plaintiff's argument that there is insufficient evidence to support any possible violation of Section 1112B(5), since he has not participated in the action of a governmental entity involving any lessee that has done business with Glazer Steel, is without *461 merit. There is no evidence of specific transactions by the Mineral Board involving these lessees since the adoption of the Code, but the duties of the Mineral Board include the checking of royalty payments to determine if they are correct and timely. La. R.S. 30:136(A). Plaintiff has participated in the "action of a governmental entity". La.R.S. 42:1102(1).[7]In Re Buquet, La.App., 184 So.2d 288 (1st Cir.) writ denied 249 La. 198, 186 So.2d 159 (1966), is distinguishable because the definition of "participate" has been expanded since that decision.
Plaintiff argues that neither section prohibits business dealings between state mineral lessees and legal entities in which a mineral board member has a controlling interest. Both Section 1111C(2)(d) and Section 1112B(5) are applicable to "public servants." Sections 1111E(1), 1112B(2), 1112B(3), 1113A, 1113B, 1113C, and 1121C,[8] on the other hand, refer specifically to public servants and legal entities of which the public servant is an officer, director, trustee, partner or employee or in which the public servant has a substantial economic interest.
Rather than showing in Sections 1111E(1), 1112B(2) and (3), 1113A, B, and C, *462 and 1114B an equation of public servants with their corporations, as contended by defendant, we believe, the legislature has carefully enumerated specific instances in which a public servant's interest in a corporation or legal entity will impinge on his public duties. Those include receiving something of economic value for assisting a person in a transaction or appearance before the public servant's agency, participating in transactions involving the governmental entity and in which the corporation or legal entity has a substantial economic interest, and being interested in any way in a contract or other transaction which is under the supervision or jurisdiction of the agency of the appointed member.
We believe this issue to be one of legislative intent. Where provisions of the law are clear and unambiguous, courts will not deviate from the terms on the pretext of pursuing the spirit of the law. In Re Buquet, supra.
Defendant alleges that the above interpretation would foster ludicrous results in that a board member who is prevented from rendering services or selling goods to his board or commission could circumvent the code by forming a corporation. There is no suggestion that the instant corporation was formed for that purpose. In any event, the problem is more appropriately directed to the Legislature.
Defendant cites David Moore Development Company v. Higgins Industries, Inc., La.App., 163 So.2d 139 (4th Cir.), writ denied 246 La. 580, 165 So.2d 481 (1964), for the proposition that corporations cannot be used as a shield to hide one's true interest in a transaction. In that case a shell corporation that had the same offices and officers as another was being used to avoid liability. We do not find it controlling.
This conclusion is further reinforced by the fact that the Legislature intended to include as members of the Mineral Board those who were engaged in the industry and related business activity so long as the Code of Governmental Ethics was complied with. La.R.S. 30:121D.[9] Had it intended to exclude those in plaintiff's situation, it could easily have been more explicit.
For these reasons the decision of the Commission on Ethics for Public Employees is reversed and plaintiff is hereby reinstated on the Mineral Board. Costs are assessed to the defendant.
REVERSED.
NOTES
[1] La.R.S. 1111C(2)(d) and 42:1112B(5):

"C. Payments for nonpublic service.
(2) No public servant shall receive any thing of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
* * * * * *
(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115 from receiving a gift."
"B. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest:
* * * * * *
(5) Any person who is a party to an existing contract with such public servant or who owes any thing of economic value to such public servant and who by reason thereof is in a position to affect directly the economic interests of such public servant."
[2] La.R.S. 42:1117:

"No public servant or other person shall give, pay, loan, transfer, or deliver or offer to give, pay, loan, transfer, or deliver, directly or indirectly, to any public servant or other person any thing of economic value which such public servant or other person would be prohibited from receiving by any provision of this Part."
[3] The penalties that may be administered by the commission are as follows:

"§ 1153. Penalties
B. Upon finding that any public employee or other person has violated any provision of this Chapter, the commission by a majority vote of the membership, may remove, suspend, or order a reduction in pay, or demotion of the public employee or other person, or impose a fine of not more than five thousand dollars, or both."
[4] La.R.S. 42:1102(22) and 42:1102(24):

"Unless the context clearly indicates otherwise, the following words and terms, when used in this Chapter, shall have the following meanings:
* * * * * *
(22) `Thing of economic value' means money or any other thing having economic value, except food, drink, or refreshments consumed by a public servant, including reasonable transportation and entertainment incident thereto, while the personal guest of some person, and includes but is not limited to:
(a) Any loan, except a bona fide loan made by a duly licensed lending institution at the normal rate of interest, any property interest, interest in a contract, merchandise, service, and any employment or other arrangement involving a right to compensation.
(b) Any option to obtain a thing of economic value, irrespective of the conditions to the exercise of such option.
(c) Any promise or undertaking for the present or future delivery or procurement of a thing of economic value.
In the case of an option, promise, or undertaking, the time of receipt of the thing of economic value shall be deemed to be, respectively, the time the right to the option becomes fixed, regardless of the conditions to its exercise, and the time when the promise or undertaking is made, regardless of the conditions to its performance.
Things of economic value shall not include salary and related benefits of the public employee due to his public employment or salary and other emoluments of the office held by the elected official."
* * * * * *
"(24) `Service' means the performance of work, duties, or responsibilities, or the leasing, rental, or sale of movable or immovable property."
[5] La.R.S. 42:1112C:

"C. Every public employee, excluding an appointed member of any board or commission, shall disqualify himself from participating in a transaction involving the governmental entity when a violation of this Part would result. The procedures for such disqualification shall be established by regulations issued pursuant to R.S. 42:1134(1)."
[6] La.R.S. 42:1101B:

"B. It is essential to the proper operation of democratic government that elected officials and public employees be independent and impartial; that governmental decisions and policy be made in the proper channel of the governmental structure; that public office and employment not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government. The attainment of one or more of these ends is impaired when a conflict exists between the private interests of an elected official or a public employee and his duties as such. The public interest, therefore, requires that the law protect against such conflicts of interest and that it establish appropriate ethical standards with respect to the conduct of elected officials and public employees without creating unnecessary barriers to public service. It is the purpose of this Chapter to implement these policies and objectives."
[7] La.R.S. 42:1102(1):

"Unless the context clearly indicates otherwise, the following words and terms, when used in this Chapter, shall have the following meanings:
(1) `Action of a governmental entity' means any action on the part of a governmental entity or agency thereof including, but not limited to:
(a) Any decision, determination, finding, ruling, or order, including the judgment or verdict of a court or a quasi-judicial board, in which the governmental entity or any of its agencies has an interest, except in such matters involving criminal prosecutions.
(b) Any grant, payment, award, license, contract, transaction, decision, sanction, or approval, or the denial thereof, or the failure to act with respect thereto; and in which the governmental entity or any of its agencies has an interest except in matters involving criminal prosecutions.
(c) As the term relates to a public servant of the state, any disposition of any matter by the legislature or any committee thereof; and as the term relates to a public servant of a political subdivision, any disposition of any matter by the governing authority or any committee thereof."
[8] La.R.S. 42:1111E(1):

"E. Payments for rendering assistance to certain persons.
(1) No public servant, and no legal entity of which such public servant is an officer, director, trustee, partner, or employee, or in which such public servant has a substantial economic interest, shall receive or agree to receive any thing of economic value for assisting a person in a transaction, or in an appearance in connection with a transaction, with the agency of such public servant."
La.R.S. 42:1112B(2) and (3):
"B. No public servant, except as provided in R.S. 42:1120, shall participate in a transaction involving the governmental entity in which, to his actual knowledge, any of the following persons has a substantial economic interest:
* * * * * *
(2) Any person in which he has a substantial economic interest of which he may reasonably be expected to know.
(3) Any person of which he is an officer, director, trustee, partner, or employee.
* * * * * *
La.R.S. 42:1113A, B and C:
"A. No public servant, excluding any legislator and any appointed member of any board or commission, member of such public servant's immediate family, or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other transaction which is under the supervision or jurisdiction of the agency of such public servant.
B. Other than a legislator, no appointed member of any board or commission, member of his immediate family, or legal entity in which he has an economic interest shall bid on or enter into or be in any way interested in any contract, subcontract, or other transaction which is under the supervision or jurisdiction of the agency of such appointed member.
C. No legislator, member of his immediate family, or legal entity in which he has a controlling interest shall bid or or enter into or be in any way interested in any contract, subcontract, or other transaction involving the legislator's agency."
La.R.S. 42:1121C:
"C. No legal entity in which a former public servant is an officer, director, trustee, partner, or employee shall, for a period of two years following the termination of his public service, assist another person, for compensation, in a transaction, or in an appearance in connection with a transaction in which such public servant at any time participated during his public service and involving the agency by which he was formerly employed or in which he formerly held office."
[9] La.R.S. 30:121D:

"D. The board shall administer the state's proprietary interest in minerals as herein provided. The governor may appoint to the board members engaged in the industry and related business activity which members and which board shall be subject to the provisions of R.S. 42:1101 through R.S. 42:1168."